MERREN v. EMPLOYMENT SECURITY COMMISSION.

DECISION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—VOLUNTARY QUIT—EQUALLY DIVIDED COURT.

    Denial by employment security commission referee and appeal board, circuit court, and Court of Appeals of unemployment compensation benefits to employee who had voluntarily quit job with Michigan employer to take job with an employer not subject to the State's employment security act and laid off from latter job 10 weeks later is affirmed by an equally divided court (CLS 1961, §§ 421.29, 421.40, 421.41).

SEPARATE OPINION FOR AFFIRMANCE.

DETHMERS, C. J., and KELLY, BLACK, and BRENNAN, JJ.

2. UNEMPLOYMENT COMPENSATION—EMPLOYER—REINSTATEMENT.

    *Employee who quit job with Michigan employer to take a job with an employer not subject to the State's employment security act, and who was laid off from the latter job 10 weeks later, was not entitled to reinstatement or use of any part of any credit weeks he had acquired while working for the Michigan employer which were canceled by his voluntary termination of employment, where record discloses no evidence the other employer fell within the definition of "employer" under the act (CLS 1961, §§ 421.29, 421.40, 421.41).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 4, 6–11] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 34 *et seq.*
[3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 13 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error § 1009.

3. SAME—WORDS AND PHRASES—EMPLOYER.

The term "employer" is defined by the employment security act to mean only "in-State employers" (CLS 1961, § 421.40).

4. SAME—MICHIGAN EMPLOYERS—REINSTATEMENT.

An individual who leaves his work voluntarily without good cause attributable to a Michigan employer, for the purpose of accepting permanent full-time work with another Michigan employer, and who during the 39 weeks following his separation is laid off for lack of work by his new employer, comes within the amendment which provides for reinstatement of enough of his credit weeks with his separating employer so that the total number of weeks of benefits available to him from all employers at the time of layoff will not be less than if he had been laid off by separating employer (CLS 1961, § 421.29).

5. COSTS—UNEMPLOYMENT COMPENSATION—PUBLIC QUESTION.

Costs are not allowed on appeal from denial of benefits by employment security commission, a public question being involved.

SEPARATE OPINION FOR REVERSAL.
T. M. KAVANAGH, SOURIS, O'HARA, and ADAMS, JJ.

6. STATUTES—DEFINITIONS.

Statutory definitions contained in employment security act do not apply if the context clearly requires otherwise (CL 1948, § 421.39).

7. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS.

The normal rule of disqualification for compensation benefits for unemployment resulting from a voluntary quit shall not apply when claimant voluntarily quits one job in order to take another permanent full-time job and soon thereafter is laid off because of lack of work (CLS 1961, § 421.29).

8. SAME—STATUTE—CREDIT WEEKS.

The employment security commission may take into account when determining eligibility for unemployment compensation benefits to a person who has made a voluntary quit, been employed elsewhere and then laid off, the number of weeks of benefits available to the claimant in other jurisdictions in computing how many of his credit weeks earned in this State

*from his separating employer should be reinstated (CLS 1961, § 421.29).*

9. Same—Statutes—Employer.

*An out-of-State company which had one employee in Michigan and at least three others anywhere else qualifies as a Michigan "employer" under the employment security act (CLS 1961, §§ 421.40, 421.41).*

10. Same—Statutes—Entitlement to Benefits.

*Slavish application of statutory definition of employer under employment security act causes claimant's right to benefits to turn upon whether the new employer has any employees, other than claimant, employed in Michigan (CLS 1961, §§ 421-.40, 421.41).*

11. Same—Disqualification for Benefits—Voluntary Quit.

*The statutory provision disqualifying an individual for unemployment compensation benefits if he leaves his work voluntarily without good cause attributable to his employer applies to separations from work performed outside this State (CLS 1961, § 421.29).*

Appeal from Court of Appeals, Division 2; Lesinski, C. J., and T. G. Kavanagh and Quinn, JJ., affirming Ingham, Smith (Richard G.), J., presiding. Submitted October 3, 1967. (Calendar No. 3, Docket No. 51,514.) Decided March 4, 1968.

3 Mich App 383, affirmed by equally divided court.

Certiorari by Robert G. Merren against Employment Security Commission and Lear Siegler, Inc., following determination by Employment Security Commission that plaintiff was disqualified from receiving benefits and order for reimbursement for benefits erroneously paid. Judgment for defendants. Judgment affirmed by Court of Appeals. Plaintiff appeals. Affirmed by an equally divided court.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Arthur W. Brown,* Assistant Attorney General, for defendant.

KELLY, J. *(for affirmance).* Appellant presents this one question:

"After the claimant in this case had quit a job with a Michigan employer to take a job with a Florida employer and was laid off from the latter job about 10 weeks after it commenced because of cancellation of a Federal government contract, was he properly disqualified for unemployment compensation benefits under a provision of the Michigan employment security act which provides that a claimant will be disqualified from unemployment compensation benefits if he leaves his work voluntarily without good cause attributable to his employer but provides an exception if the claimant left to accept permanent full-time work with another employer and is laid off within 39 weeks, the disqualification being based on the theory that the exception applies only if the second employer is also a Michigan employer?"

and claims that the hearing referee, the appeal board, and the circuit court for the county of Ingham, and the Court of Appeals erroneously answered this question with the answer "yes."

Appellant stresses the fact that before the 1955 amendment, section 29(1)(a)(1) of the Michigan employment security act provided:

"(1) An individual shall be disqualified for benefits: (a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit. * * * Any wages earned prior to any such act with the employer in-

volved therein, whether earned during the base period or within the current benefit year, shall not be used as a basis for computing or paying benefits for any period subsequent to the time said disqualifying act occurred." CL 1948, § 421.29, as amended by PA 1954, No 197 (Stat Ann 1960 Rev § 17.531).

Appellant claims "the legislature recognized that the rigors of this kind of disqualification should be softened in the case of the ambitious person who seeks to better himself through changing employment from one company to another and becomes the unfortunate victim of layoff with the second employer within a relatively short time  * * *  and the legislature took steps in the early 1950's to remedy it" by passing the following amendment:

"Provided further, however, That if an individual leaves his work voluntarily without good cause attributable to the employer for the purpose of accepting permanent full-time work with another employer, and if, during the 39 weeks following his separation he is laid off for lack of work by his new employer, enough of his credit weeks with his separating employer whom he left voluntarily shall be reinstated so that the total number of weeks of benefits available to him from all employers at the time of such layoff will not be less than if he had been laid off by the said separating employer." PA 1936 (Ex Sess), No 1, § 29, subd (1)(a), as amended by PA 1955, No 281 (CLS 1961, § 421.29 [Stat Ann 1960 Rev § 17.531]).

Appellant claims that by answering "yes" to the above question, the appeal board and the courts gave an overly technical construction to the act, thereby completely defeating the legislature's intent and purpose in enacting the 1955 amendment.

The legislature spelled out what was meant in the enactment by the use of the words "employing unit" and "employer."

Section 40 defines "employing unit":

" 'Employing unit' means any  *  *  *  corpora-
tion, whether domestic or foreign,  *  *  *  which
has or subsequent to this amendatory act, had in
its employ 1 or more individuals performing services
for it *within this State*." (Emphasis ours.)  CLS
1961, § 421.40 (Stat Ann 1960 Rev § 17.542).

Section 41 defines "employer":

" 'Employer' means: (1)  *  *  *
"(b) *Any employing unit* which in each of 20 dif-
ferent weeks within the calendar year 1956 or within
any succeeding calendar year  *  *  *  has or had in
employment 4 or more individuals." (Emphasis
ours.)  CLS 1961, § 421.41 (Stat Ann 1960 Rev § 17.-
.543).

Using these definitions, it is impossible to interpret
the amendment in any other way than as though it
read: If an individual leaves his work voluntarily
without good cause attributable to the *Michigan
employer* for the purpose of accepting permanent
full-time work with another *Michigan employer,* and
if during the 39 weeks following his separation from
his former *Michigan employer* he is laid off for lack
of work by his new *Michigan employer,* then the in-
dividual comes within the provisions of the amend-
ment.

The appeal board in denying plaintiff's claim at-
tached and approved the referee's decision* which

---

* "The key to this situation would appear to turn on the express
language of the reinstatement proviso where it is stated, 'enough
of his credit weeks with his separating employer whom he left vol-
untarily shall be reinstated.'  By this language it is the opinion of
this appeal board that the legislature intended to protect not only
the claimant in his efforts at other employment but at the same
time give some protection to the separating employer from whom the
claimant left his work voluntarily so that the separating employer
would not have to assume the entire burden of having charged to
its rating account the entire amount of benefits so paid to the in-
dividual.  Therefore, it would appear that if the legislature intended
to reinstate only enough of the credit weeks so earned with a sep-

stressed the fact that adjusting credit weeks between the separating employer and the new employer was proof that the legislature intended the amendment to apply only when both employers were Michigan employers.

We agree with such a conclusion.

Affirmed. No costs, a public question involved.

Dethmers, C. J., and Black and Brennan, JJ., concurred with Kelly, J.

Souris, J. (*for reversal*). I dissent. This is a classic example of a case in which the statutory definition of "employer"[1] should not be applied. The legislature itself has said, in section 39[2] of the employment security act, that the statutory definitions contained in the act do not apply if the context clearly requires otherwise. I think the context of the first proviso clause of section 29(1)(a)[3] clearly

---

arating employer from whom the individual leaves voluntarily and at the same time fulfill the other condition of the proviso which states as follows, 'so that the total number of weeks of benefits available to him from all employers at the time of such layoff will not be less than if he had been laid off by the said separating employer,' then it is apparent that the new employer must be a subject employer under the act; otherwise it would be impossible for the claimant to earn credit weeks in the course of employment with the new employer. To hold that the new employer need not be a subject liable employer under the act would create an anomaly and it would be impossible to fulfill the intent of the legislature."

[1] " 'Employer' means: (1) * * *

"(b) Any employing unit which in each of 20 different weeks within the calendar year 1956 or within any succeeding calendar year * * * has or had in employment 4 or more individuals." CLS 1961, § 421.41 (Stat Ann 1960 Rev § 17.543).

" 'Employing unit' means any * * * * corporation, whether domestic or foreign, * * * which has or subsequent to this amendatory act, had in its employ 1 or more individuals performing services for it within this State." CLS 1961, § 421.40 (Stat Ann 1960 Rev § 17.542).

[2] CL 1948, § 421.39 (Stat Ann 1960 Rev § 17.541).

[3] "Provided further, however, That if an individual leaves his work voluntarily without good cause attributable to the employer for the purpose of accepting permanent full-time work with another employer, and if, during the 39 weeks following his separation he is laid off for lack of work by his new employer, enough of his

requires that the statutory definition of "employer" not be applied.

The proviso clause serves well an enlightened social policy of encouraging the mobility of labor. It provides, in effect, that the normal rule of disqualification for compensation benefits for unemployment resulting from a voluntary quit shall not apply when the claimant voluntarily quits one job in order to take another permanent full-time job and then soon thereafter is laid off because of lack of work. Nothing in the proviso clause limits its beneficial effect to new jobs in Michigan.   Yet Mr. Justice KELLY today reads such a limitation into the proviso clause by a mechanistic application of the statutory definition of "employer" and by an unwarranted assumption that the "separating employer's" rating account cannot be credited with compensation benefits available to the claimant from other employers unless those other employers are "Michigan employers".

Justice KELLY suggests, by his quotation from the appeal board's opinion, that the legislature must have intended such a limitation to:

"give some protection to the separating employer from whom the claimant left his work voluntarily so that the separating employer would not have to assume the entire burden of having charged to its rating account the entire amount of benefits so paid to the individual.   *   *   *   It is apparent that the new employer must be a subject employer under the act; otherwise it would be impossible for the claimant to earn credit weeks in the course of employment with the new employer.   To hold that the new em-

_____

credit weeks with his separating employer whom he left voluntarily shall be reinstated so that the total number of weeks of benefits available to him from all employers at the time of such layoff will not be less than if he had been laid off by the said separating employer." CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531), since amended.

ployer need not be a subject liable employer under
the act would create an anomaly and it would be
impossible to fulfill the intent of the legislature."

However, because of his rigid reliance upon the
statutory definition of "employer", Justice KELLY
would have to allow benefits against Lear Siegler in
this case had Douglas Aircraft had even one em-
ployee in Michigan and at least three others any-
where else (thus qualifying as a Michigan "em-
ployer" within the statutory definition[4]) even though
claimant's short-lived job with Douglas was in Flor-
ida or, indeed, Timbuktu. Under such circumstances,
claimant would not have earned any credit weeks
under the Michigan act notwithstanding his employ-
ment with a company which fits the definition of
Michigan "employer". In short, slavish application
of the statutory definition would cause claimant's
entitlement to benefits to turn upon whether the
new employer had any employees other than claim-
ant employed in Michigan; and whether or not it
did could not have any effect whatever upon Lear
Siegler's experience rating or upon the social policy
sought to be achieved by the proviso clause of section
29(1)(a).

Since application of the statutory definition of
"employer" in the context of the proviso clause
would lead to an illogical and anomalous result, I
would accept the legislature's invitation in section 39
not to apply the statutory definition. I would hold
that the proviso clause applies whenever a claimant
voluntarily quits one job to accept permanent full-
time work, wherever located, with another employer,
whether or not one subject to the act. Such a holding
would be totally consistent with the legislature's
purpose not to discourage the mobility of labor. Al-
though not necessary to decision here, it may be ap-

---

[4] See footnote 1, *supra*.

propriate to note that the language of the proviso
does not prohibit the commission's taking into ac-
count the number of weeks of unemployment com-
pensation benefits available to the claimant in other
jurisdictions in computing how many of his credit
weeks earned with his Michigan "separating em-
ployer" should be reinstated.  Such a reading of
the proviso clause would treat all claimants equally,
would protect "separating employers'" rating ac-
counts, and would fully implement the legislature's
manifest purpose.

In *Lyons* v. *Employment Security Commission*
(1961), 363 Mich 201, all members of this Court
agreed that section 29(1)(a)(1), the old voluntary
quit disqualification provision, applied to the volun-
tary quitting of employment out of State for pur-
pose of determining whether benefits were payable
and chargeable to a prior Michigan employer from
whose employment claimant earlier had been laid
off.[5]  The conclusion for which I write in this case
has the merit of logical consistency with the conclu-
sion we all reached in *Lyons* dealing with the same
statutory section if not the identical portion there-
of.

I would reverse and remand for further proceed-
ings consistent with the views expressed herein.

T. M. KAVANAGH, O'HARA, and ADAMS, JJ., con-
curred with Souris, J.

---

[5] While all Justices agreed that section 29(1)(a)(1) applied
to voluntary quitting of employment out of State, we disagreed on
whether the facts of the case justified a finding that claimant quit
his out-of-State job voluntarily.