BINGHAM v AMERICAN SCREW PRODUCTS COMPANY

Docket No. 56535. Argued October 9, 1975 (Calendar No. 10).—Decided December 21, 1976.

Arlie K. Bingham claimed unemployment compensation against American Screw Products Company, and the Employment Security Commission awarded compensation. The plaintiff was employed by the defendant American Screw Products Company for nine months in 1969 until he quit his job and returned to his home in Kentucky because he had been unable to find adequate housing for his family in the Detroit area. The plaintiff refused an offer to return to his old job and the MESC found that the plaintiff had taken up residence in Kentucky and had good cause to refuse the job offer in Michigan because of the distance of available work from his residence. The Oakland Circuit Court, William John Beer, J., reversed the award. The Court of Appeals, J. H. Gillis and Van Valkenburg, JJ. (Bronson, P. J., dissenting), affirmed the circuit court (Docket No. 18667). Defendant Michigan Employment Security Commission appeals. *Held:*

1. The requirement that a claimant for unemployment compensation to be eligible for benefits be "able and available" for work and "seeking work" means that he must be genuinely attached to the labor market, *i.e.,* he must be desirous to obtain employment, and must be willing and ready to work. There is no requirement in the act, however, that the claimant shall be

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Unemployment Compensation § 63.

Unemployment compensation as affected by employee's or employer's removal from place of employment. 13 ALR2d 874.

[2, 4, 6] 76 Am Jur 2d, Unemployment Compensation § 70.

[2–4, 6, 9] Circumstances of leaving employment, availability for work, or nature of excuse for refusing re-employment as affecting right to social security or unemployment compensation. 165 ALR 1382.

[3] 76 Am Jur 2d, Unemployment Compensation § 68.

[5] 25 Am Jur 2d, Domicil § 4.

[7] 76 Am Jur 2d, Unemployment Compensation § 6.

[8] 76 Am Jur 2d, Unemployment Compensation § 8.

[9] 76 Am Jur 2d, Unemployment Compensation §§ 68–80.

available for work at any particular place, such as the locality in which he earned his wage credits or where he last worked or resided. The mere fact that a claimant has moved from one locality to another does not create a basis for holding him unavailable for work.

2. A claimant is not disqualified for refusing an offer of work which is an unreasonable distance from his residence. Bingham's "residence" was his settled or permanent home where he intends to remain. The locality of the offer of work, Farmington, Michigan, was clearly an unreasonable distance from his residence at the time the offer was made, Pineville, Kentucky.

3. Claimant Bingham requalified for unemployment compensation benefits after serving the period of disqualification under the act and was seeking work and able and available for work within the environs of his home. He was not disqualified for refusing his former employer's job offer because the offer was not an offer of "suitable work" and therefore was rejected by the claimant with "good cause" because the job was too far distant from his residence.

Justice Fitzgerald, joined by Justice Lindemer, concurred in reversing the Court of Appeals because the Supreme Court must apply the statute as it is written, but wrote that the result is contrary to one of the most basic policies of the statute, which is to encourage employers to provide stable employment, and further reduces funds available to those who are involuntarily unemployed by extending benefits to persons who voluntarily leave regular employment in this state to become nonresidents.

Reversed and the decision of the Employment Security Commission reinstated.

Justice Coleman voted to remand to the Employment Security Commission for a determination whether the plaintiff was disqualified under § 29(1)(d) or § 29(1)(e) of the unemployment compensation act, and a finding of facts in support of the conclusion. A different analysis is required under the subsections: "failed without good cause to report * * * for an interview", and "failed without good cause to accept suitable work when offered", respectively.

57 Mich App 21; 225 NW2d 199 (1974) reversed.

### OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION—QUALIFICATION FOR BENEFITS—
   RESIDENCE.
   A claimant of unemployment compensation who is disqualified

for benefits because he voluntarily terminated his employment in Michigan may requalify for benefits after the statutory requalification period although he resides outside the state during and after the requalification period (MCL 421.29[3]; MSA 17.531[3]).

2. UNEMPLOYMENT COMPENSATION—SUITABLE WORK—FAILURE TO RE-PORT—GOOD CAUSE—RESIDENCE.

A claimant for unemployment compensation, a worker from Kentucky who left a job in Michigan because he could not find adequate housing for his family at a price he could afford, returned to Kentucky, registered for work with the appropriate employment office there, and diligently sought and made himself available for suitable work, but turned down a job offer in Michigan from his former Michigan employer because of the distance from his Kentucky residence, was not disqualified for benefits, because the offer was not an offer of "suitable work", and therefore was rejected by the claimant with "good cause", because the job was too far distant from his residence (MCL 421.29[1]; MSA 17.531[1]).

3. UNEMPLOYMENT COMPENSATION—AVAILABLE FOR WORK—SEEKING WORK—WORDS AND PHRASES.

The requirement that a claimant for unemployment compensation to be eligible for benefits be "able and available" to work and "seeking work" means that he must be genuinely attached to the labor market, i.e., he must be desirous of obtaining employment, and must be willing and ready to work (MCL 421.28[1], 421.29[1]; MSA 17.530[1], 17.531[1]).

4. UNEMPLOYMENT COMPENSATION—AVAILABLE FOR WORK—QUALIFI-CATION FOR BENEFITS.

There is no requirement in the unemployment compensation act that a claimant shall be available for work in any particular place; the mere fact that a claimant has moved from one locality to another does not create a basis for holding him disqualified for benefits as unavailable for work (MCL 421.28[1]; MSA 17.530[1]).

5. WORDS AND PHRASES—RESIDENCE OF CLAIMANT.

Residence means the place where one resides; an abode; a dwelling or habitation; especially, a settled or permanent home or domicile; residence is made up of fact and intention: there must be the fact of abode, and the intention of remaining, and the definitions also suggest that a residence is one place and not several.

6. UNEMPLOYMENT COMPENSATION—SUITABLE WORK—RESIDENCE OF CLAIMANT.

    The word "residence", as used in the definition of "suitable work" in the unemployment compensation act, is to be given its plain and ordinary meaning; it means the place in which the claimant resides at the time a job offer is made, and does not mean both that and the places where he resided when he earned his base credit weeks (MCL 421.29[6]; MSA 17.531[6]).

CONCURRING OPINION

FITZGERALD and LINDEMER, JJ.

7. UNEMPLOYMENT COMPENSATION—PUBLIC POLICY—STABLE EMPLOYMENT—NONRESIDENT CLAIMANTS.

    *One of the most basic policies underlying the Employment Security Act is to encourage employers to provide stable employment; to extend benefits to persons who voluntarily leave regular employment in this state to become nonresidents does not encourage stable employment practices, and it further reduces funds available to those who are involuntarily unemployed (MCL 421.2; MSA 17.502).*

8. UNEMPLOYMENT COMPENSATION—STATUTES—PUBLIC POLICY.

    *It is not the proper function of the Supreme Court to amend the Employment Security Act to broaden or extend the disqualifications fixed, in plain language, by the Legislature, even though a particular provision may seem not to be consonant with the basic policy of the act.*

SEPARATE OPINION

COLEMAN, J.

9. UNEMPLOYMENT COMPENSATION—QUALIFICATION FOR BENEFITS—FAILURE TO REPORT—FAILURE TO ACCEPT WORK.

    *A different analysis is required under the unemployment compensation act to determine whether a claimant has been disqualified for unemployment compensation benefits because he "failed without good cause to report * * * for an interview" and "failed without good cause to accept suitable work when offered" (MCL 421.29[1][d], 421.29[1][e]; MSA 17.531[1][d], 17.531[1][e]).*

*Goodenough, Smith & May* for defendant American Screw Products Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

Amicus Curiae: The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) by *John A. Fillion,* General Counsel, *Jordan Rossen,* Associate General Counsel, and *M. J. Whitman,* Assistant General Counsel *(Edwin G. Fabré, Leonard R. Page, Marley S. Weiss,* and *Anne M. Trebilcock,* Assistants General Counsel, of counsel).

WILLIAMS, J. This complex unemployment compensation case involves the interpretation of interrelated provisions of § 28 ("eligibility for benefits") and § 29 ("disqualification from benefits") of the Michigan Employment Security Act. There are two issues: (1) whether claimant, disqualified under the act for voluntarily terminating his employment, can requalify for benefits under the act outside the State of Michigan; (2) whether claimant, after he moved home to Kentucky, was disqualified from receiving benefits for refusing the employer's offer of his former job or whether claimant's rejection of this reemployment offer was with "good cause" because the offer was not an offer of "suitable work" due to the unreasonable distance between his Kentucky residence and the Michigan job offer.

At the outset, it is essential we bear in mind that our unemployment compensation act is part of a Federal-state unemployment compensation system. This Federal-state system is grounded in the Federal Social Security Act, the Wagner-Peyser Act, and the Federal Unemployment Tax Act, together with state laws enacted in conform-

ity with the standards set forth by these Federal laws. The Federal-state system is implemented by a Federal tax offset to the employers of a state provided that the state's unemployment compensation law conforms to minimum Federal standards. Furthermore, every state legislature has included in its state unemployment compensation law provisions authorizing the responsible executive (in Michigan, the Michigan Employment Security Commission—MESC) to enter into interstate agreements. These agreements are essentially designed to deal with claimants who earned qualifying wages in one state but who upon being separated from employment moved their residence to another state and claimants who at the time of their separation from employment had accumulated wage credits sufficient to make them eligible for benefits in more than one state. Inherent in these agreements is the recognition of every state legislature of the Federal dimension of the unemployment laws and the mobility of labor essential to the operation of our private enterprise system. Both the spirit and letter of our act support these Federal and interstate aspects of unemployment compensation.

Accordingly, because of the plain language of our act as well as the aforesaid state-Federal implications, we hold that claimant Bingham, a Kentucky worker who left a Michigan job because he could not find adequate housing for his family at a price he could afford, returned to Kentucky, registered for work with the appropriate employment office there, diligently sought and made himself available for suitable work, but turned down a job offer from his former Michigan employer due to the distance from his Kentucky residence, (1) requalified for benefits after serving the period of

disqualification under the act, and (2) was not
disqualified for refusing his former employer's job
offer because the offer was not an offer of "suitable
work" and was therefore rejected by claimant with
"good cause" due to the fact that the job was too
far distant from his residence.

We reinstate the administrative determination
of the Michigan Employment Security Commis-
sion, and reverse the trial court and the Court of
Appeals.

## I—FACTS

Claimant Arlie K. Bingham was employed by
American Screw Products Company from Febru-
ary 17, 1969 to November 17, 1969. He worked as
a machine operator; his last wage-rate was $3.10.
per hour.

Bingham testified that he left his Michigan em-
ployment because he had been unable to find
adequate housing for his wife and four children in
Michigan at a price which he could afford. Bing-
ham explained that while he was employed in
Michigan he had searched continuously for a home
in which his wife and four children could live. His
family came to Michigan and lived with him for
approximately one month; but the living quarters
were inadequate. Because he was unable to find
adequate living quarters within his means, his
family was forced to return to Pineville, Kentucky,
his original home. After his family returned to
Kentucky, Bingham made further efforts to find
adequate living quarters, but his efforts proved
futile. He thereupon severed his Michigan employ-
ment, returning to Pineville, Kentucky, to join his
family.

On December 2, 1969, Bingham filed an inter-

state claim for unemployment benefits with the Commonwealth of Kentucky Division of Employment Service in Middlesboro, Kentucky. On February 20, 1970 the Michigan Employment Security Commission issued a determination holding (1) claimant's separation from employment was "a voluntary leaving without good cause attributable to the employer" under § 29(1)(a) of the Michigan Employment Security Act; (2) claimant was thereby disqualified under § 29(1)(a) of the act for the week ending November 22, 1969 and was subject to a 6-week requalification period under § 29(3), the requalification period having been completed as of January 10, 1970; (3) claimant's benefit entitlement was reduced by 6 weeks as provided in § 29(4) of the act (from 26 to 20 weeks).

On March 9, 1970, the employer protested the MESC determination. The employer took no exception to the MESC's finding that Bingham's separation was "voluntary * * * without good cause attributable to the employer" under § 29(1)(a) of the act. However, the employer stated that on March 9, 1970 notice had been sent to Bingham to report to work on his regular job not later than March 16, 1970. Bingham, at that time living in Kentucky, refused the offer of work because of its distance from his home.

On April 3, 1970, the MESC issued a redetermination affirming its determination of February 20, 1970. The MESC held:

"[C]laimant established good cause for not reporting when recalled to report on 3/12/70 and is not subject to disqualification under the provisions of subsection 29(1)(a) of the act.

"Claimant has a car for transportation and is seeking work within a radius of 50 miles of Middlesboro, Ky., where work is generally similar to work he performed

in Michigan is available. He is not placing any restrictions on his availability for work as to hours or wages. He is actively seeking work and the Kentucky agency stated that his chances of securing employment are fair.

"Claimant completed the requalification requirements of the Michigan act based on his separation. He fully meets the eligibility requirements of the Michigan act and is held eligible for benefits."

This redetermination was affirmed by a Michigan Employment Security Commission Referee on October 14, 1970. On March 24, 1971, the Michigan Employment Security Commission Appeal Board also affirmed the redetermination.

On August 20, 1973, the circuit court reversed the appeal board decision. The court held that (1) the act prohibited Bingham from requalifying for unemployment benefits while residing outside the State of Michigan; (2) Bingham was required to have been available for work within the community where he lived when his employment relationship was severed (in this case Michigan) in order to have met the eligibility requirements of § 28(1)(c) of the act, MCLA 421.28; MSA 17.530; thus claimant was ineligible to receive benefits because he refused to accept the employer's Michigan job offer although he was living in Kentucky at the time the offer was made.

On November 27, 1974, the Court of Appeals affirmed part (2) of the circuit court's opinion, which held "suitable" the Michigan offer of work made to Bingham while he was living in Kentucky. 57 Mich App 21; 225 NW2d 199 (1974). The court held that as a matter of law the act required Bingham be available for work both at the locality in which he resided at the time the offer of work was made (Kentucky) and at the locality at which

he resided during the period he earned his base period credit weeks (Michigan). The Court did not rule on part (1) of the circuit court's opinion, *i.e.* whether Bingham could requalify for benefits while residing outside the State of Michigan. The Court held that this issue was not properly before it because the employer had not timely protested the February 20, 1970 MESC determination of this issue.

The MESC applied for leave to appeal the Court of Appeals decision. This Court granted leave on February 6, 1975.

## II—CLAIMANT REQUALIFIED FOR BENEFITS WHILE OUTSIDE THE STATE OF MICHIGAN

The first issue, properly[1] raised by the trial

[1] The circuit court held that claimant was required to reside in the State of Michigan in order to requalify for benefits under the act. On appeal, the Court of Appeals held that it was unnecessary to rule on this issue "Since defendant company neither appealed nor sought a redetermination on that question within the 15-day period specified by MCLA 421.32a; MSA 17.534(1), the question was not properly before the circuit court." 57 Mich App 21, 25. The basis of the court's decision was that the employer did not file its protest of the February 20, 1970 determination within the 15-day period prescribed by § 32a of the act. Section 32a provided in pertinent part:

"The commission shall upon application by an interested party filed with the commission within 15 days after the mailing or personal service of a notice of determination, or may upon its own motion within said period, review any determination and thereafter issue a redetermination affirming, modifying or reversing the prior determination and stating the reasons therefor. * * * " MCLA 421.32a; MSA 17.534(1).

Both the MESC and the employer contend the court's decision not to rule on this issue was in error. We agree. A review of the record reveals that the employer protested the February 20, 1970 determination on March 9, 1970. The fifteenth day after February 20, 1970 was Saturday, March 7, 1970. Because the last day of the 15-day period was a Saturday, the time for filing the appeal was automatically extended to Monday, March 9, 1970, pursuant to § 49 of the act, which provided in pertinent part:

"Whenever the last day of the 15-day period, provided for in sections 14, 32a, 33, 34 and 38, falls on a Saturday, Sunday, or legal holiday, such 15-day period shall run until the end of the next day

court, is whether Bingham satisfied the requalification requirements of § 29(3) while outside the State of Michigan.

Section 29(3) stated:

"(3) An individual who is disqualified under subsection 29(1)[2] shall * * * complete 6 requalifying weeks * * * for each of which he * * *

"(b) would otherwise meet all the requirements of this act to receive a waiting period credit or a benefit payment if he were not disqualified under subsection 29(1) * * * ."[3] MCLA 421.29(3); MSA 17.531(3).

In other words, a claimant can requalify for benefits by being *eligible* for benefits under the act during the 6-week requalification period. This being the case, the relevant question in determining the above stated issue is: was Bingham eligible for benefits under the act during the 6-week period beginning the week ending November 22, 1969, and terminating January 10, 1970, while in Pine-

which is neither a Saturday, Sunday, nor legal holiday. * * * " MCLA 421.49; MSA 17.553(1).

When § 49 of the act is applied, it is clear that the employer's protest of the February 20, 1970 determination was timely filed on March 9, 1970. Therefore we find that the Court of Appeals erred in not ruling upon the requalification issue and that this issue is properly before us.

[2] Bingham was disqualified under § 29(1)(a) of the act for having left his work "voluntarily without good cause attributable to the employer". In addition to the 6-week requalification requirement of § 29(3), as a result of his disqualification Bingham's benefits were reduced 6 weeks from 26 to 20 weeks. *See* § 29(4), MCLA 421.29(4); MSA 17.531(4).

The period of disqualification prescribed in § 29(3), a legislative determination, was extended from 6 to 13 weeks with respect to persons disqualified under § 29(1)(a) of the act in 1975 PA 110, § 1, eff June 6, 1975.

[3] A claimant may also requalify for benefits by earning or receiving remuneration in excess of $25 (§ 29[3][a]) or receiving waiting week credit or a benefit payment based on credit weeks subsequent to the disqualifying act or discharge (§ 29[3][c]). These alternatives are not pertinent to the facts of this case.

ville, Kentucky? The answer to this question is clearly yes. The act provided (§ 28[1]):

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that:

"(a) He has registered for work at and thereafter has continued to report at an employment office in accordance with such regulations as the commission may prescribe and is seeking work * * *

* * *

"(c) He is able and available to perform full-time work of a character which he is qualified to perform by past experience or training, and of a character generally similar to work for which he has previously received wages, and he is available for such work, full time, either at a locality at which he earned wages for insured work during his base period or at a locality where it is found by the commission that such work is available." MCLA 421.28(1); MSA 17.530(1).

Bingham registered for work, pursuant to § 28(1)(a), with the Kentucky Division of Employment Service in Middlesboro, Kentucky.

Section 43 of the act defines "employment office" as "a free public employment office or branch thereof operated by this state *or any other state as a part of a state-controlled system of public employment offices*" MCLA 421.43; MSA 17.547 (emphasis added). Thus Bingham's registration was wholly satisfactory and in accord with the "registration for work" requirement of § 29(1)(a).

In addition, Bingham was "seeking work" (§ 28[1][a]) and "able and available" for work as required by the act. This Court, in *Bolles v Employment Security Commission,* 361 Mich 378, 385; 105 NW2d 192 (1960), declared:

"Such * * * is the purpose of the requirement (for

eligibility to benefits) that a claimant be 'able and available' to work, that he register for work, and seek work. These * * * are indicia of genuine attachment to the labor market."

In *Dwyer v Unemployment Compensation Commission,* 321 Mich 178, 188–189; 32 NW2d 434 (1948), we defined "availability" as follows:

"The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market. To be available for work within the meaning of the act, the claimant must be genuinely attached to the labor market, *i.e.,* he must be desirous to obtain employment, and must be willing and ready to work."[4]

It is clear that Bingham was "seeking work" and "able and available" for work in the above sense, *i.e.* Bingham genuinely attached himself to the labor market within the environs of his home. It is also clear that Bingham was properly "seek-

---

[4] As we stated in *Dwyer,* "Such is the rule in other jurisdictions. See *Reger v Administrator, Unemployment Compensation Act,* 132 Conn 647, 46 A2d 844 (1946); *Hunter v Miller,* 148 Neb 402, 27 NW2d 638 (1947)." *See also Ashmore v Unemployment Compensation Commission,* 46 Del 565; 86 A2d 751 (Superior Ct 1952). As these cases indicate, the source of this rule is Freeman, *Able to Work and Available for Work,* 55 Yale L J 123, 124 (1945):

"The availability requirement is said to be satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

ing work" and "able and available" for work although he was not doing so in the locality where he earned his base credit weeks (*i.e.,* Michigan).

Section 28(1)(c) requires that a claimant must be available for work, full time, etc., "either at a locality at which he earned wages for insured work during his base period or at a locality where it is found by the commission that such work is available". On its face the statute provides two alternative localities in which a claimant may be available for work: (1) where he earned his base credit weeks (in this case, Michigan); (2) where the commission finds suitable work available for the claimant.

The second alternative is obviously written into the statute to provide for the situation where a claimant registers for benefits in a locality other than that in which he earned his base credit weeks and seeks available work (*i.e.* genuinely attaches himself to the labor market), as is a claimant's statutory right under § 28(1)(a) read in conjunction with § 43 *supra.* Of course, the "new locality" in which a claimant registers for work, seeks work, and is "able and available" for work where the commission finds work available can be either in any part of Michigan or in another state. See discussion of § 28(1)(a) and § 43 *supra.* This conclusion is in full accord with other state courts who have adopted the "availability" test we adopted in *Dwyer.* As the Superior Court of Pennsylvania declared in *Sturdevant Unemployment Compensation Case,* 158 Pa Super 548, 560–561; 45 A2d 898, 905 (1946):

"There is no requirement in the quoted section, nor elsewhere in the act, that a claimant shall be available for work in any particular place, such as the locality in which he earned his wage credits or where he last

worked or resided. The mere fact that a claimant has moved from one locality to another does not create a basis for holding him unavailable for work. If he registers for work in the new locality, and labor-market conditions there afford reasonable opportunities for work, he is available for work."

See, in accord, *Employment Security Commission v Kosic,* 12 Ariz App 455; 471 P2d 757 (1970); *Hunter v Miller, supra; Ashmore v Unemployment Compensation Commission, supra.* See, also, Anno, *Unemployment Compensation as Affected by Employee's or Employer's Removal from Place of Employment,* 13 ALR2d p 874, pp 880–883.[5]

Bingham therefore clearly satisfied the requalification requirement of § 29(3)(b) of the act by meeting all the requirements of the act "to receive a benefit payment if he were not disqualified under subsection (1)", while in Pineville, Kentucky. The trial court's holding that Bingham could not requalify for benefits outside the state of Michigan is in error and is reversed.[6]

---

[5] For contrary decisions in states which have not adopted the "availability" test we have, *see* 13 ALR2d, pp 874, 883–885.

However, the validity of these decisions is questionable in light of the subsequently passed Employment Security Amendments of 1970, Internal Revenue Code of 1954, § 3304(a)(9)(A) (effective January 1, 1972), which states:

"[C]ompensation shall not be denied or reduced to an individual solely because he files a claim in another State * * * *or because he resides in another State* * * * at the time he files a claim for unemployment compensation." 26 USC 3304(a)(9)(A) (emphasis added).

*See* fn 9 and accompanying text *infra.*

[6] The question of whether a claimant can requalify for benefits while living in a state other than Michigan has never been decided by our Court. The Court of Appeals, in *Roman Cleanser Co v Murphy,* 29 Mich App 155; 185 NW2d 87 (1970), did, however, have occasion to decide this question, holding that a claimant could not requalify under § 29(3) of the act while residing outside the State of Michigan. We overruled *Roman Cleanser,* but did so on the grounds that it was unnecessary to reach the requalification issue because no timely appeal was taken from the MESC determination in that case, thereby rendering the MESC determination res judicata. 386 Mich 698; 194 NW2d 704 (1972).

## III—CLAIMANT WAS NOT DISQUALIFIED FROM
## RECEIVING BENEFITS UNDER THE ACT

## The second, central issue in this case is whether

In reaching its conclusion in *Roman Cleanser* that a claimant could not requalify for benefits under § 29(3) while residing outside the state, the Court of Appeals relied on *Merren v Employment Security Commission,* 380 Mich 240; 156 NW2d 524 (1968):

"In *Merren v Employment Security Commission,* 3 Mich App 383 [142 NW2d 493] (1966), *affirmed by an equally divided court,* 380 Mich 240, this Court held that an employee who voluntarily left his employment with a Michigan employer and took work with an out-of-state employer, and who was then laid off by the out-of-state employer, was not entitled to reinstatement or use of any part of the credit weeks he had acquired while working for the Michigan employer. Those credit weeks were cancelled by virtue of the employee's voluntary quitting. Our rationale in *Merren* was that:

" ' "To grant Merren's claim [would be] to penalize Lear Siegler [the Michigan employer], who would then pay Merren from its own account without any contribution from another 'employer'." '

"Likewise, were we to hold in the present case that Murphy's work in Kentucky requalified him for benefits under the act we would penalize Roman by requiring it to pay Murphy from its own account without any contribution from another employer. This we refuse to do.

"We adhere to our decision in *Merren.* It controls this case. The commission erred as a matter of law in determining that Murphy's work with an out-of-state employer requalified him for benefits chargeable to the account of his former Michigan employer. We conclude that Murphy stands disqualified under the act." 29 Mich App 155, 165.

We disagree with this reasoning and conclusion reached by the Court of Appeals in *Roman Cleanser.* The court fails to mention that in *Merren* this Court was presented with a statute *altogether different in substance from § 29(3).* Section 29(1)(a)(1) of the act, which was the statute at issue in *Merren,* (1955 PA 281) provided:

"(1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit * * * .

"Provided further, however, That if an individual leaves his work voluntarily without good cause attributable to the employer for the purpose of accepting permanent full-time work with another employer, and if, during the 39 weeks following his separation he is laid off for lack of work by his new employer, enough of his credit weeks with his separating employer whom he left voluntarily shall be reinstated so that the total number of weeks of benefits available to him from all employers at the time of such lay off will not be less than if he had been laid off by the said separating employer * * * ."

In *Merren,* the claimant voluntarily left his Michigan employer and went to work in Florida for a Florida employer. He was then laid off

Bingham (having requalified for benefits under § 29[3] [b]) was disqualified under the act because

by his Florida employer and filed a claim for benefits under the MESA, asking for reinstatement or use of a part of his Michigan credit weeks which were previously cancelled by his voluntary termination of employment in Michigan. The Court of Appeals accurately perceived the issue in *Merren* as being whether claimant, having been disqualified under the act for voluntarily terminating his Michigan employment was entitled to reinstatement or use of any part of the "credit weeks" he had acquired while working for his Michigan employer, which were cancelled as an incident of his disqualification. *See* 3 Mich App 383, 385, 386. Claimant contended that he should not have been disqualified under the proviso of then § 29(1)(a)(1) *supra.* Both the Court of Appeals and this Court recognized that the merit of claimant's contention turned on the meaning of the word "employer" as used in the portion of the proviso which states: "for the purpose of accepting permanent full-time work with another employer". This Court then looked to the interaction of § 40 and § 41 of the act. Section 40 of the act defined "employing unit" as follows:

" 'Employing unit' means any * * * corporation, whether domestic or foreign, * * * which has or subsequent to this amendatory act, had in its employ 1 or more individuals performing services for it *within this state.* * * * " (Emphasis added.)

Section 41 of the act defined "employer" as follows:

" 'Employer' means (1) * * *

"(b) Any employing unit which in each of 20 different weeks within the calendar year 1956 or within any succeeding calendar year * * * has or had in employment 4 or more individuals * * * ."

We held that the reinstatement provision of § 29(1)(a)(1) of the act, read in conjunction with § 40 and § 41, mandated the conclusion that the reinstatement provision applied only when a claimant voluntarily left a Michigan employer to accept work with another Michigan employer and was subsequently laid off from the last Michigan employer. But this conclusion was necessitated by the particular statutory language of the proviso found in § 29(1)(a)(1). Section 29(1)(a)(1) required that both the separating employer and the new employer be *Michigan* employers because the MESC could not add credit weeks earned in Michigan (under the Michigan employer) to credit weeks earned in Florida (under the Florida employer). In *Merren,* the MESC had no legislative jurisdiction over the Florida employer; therefore, the MESC could not pay benefits to a claimant chargeable to the Florida employer. Clearly, *under § 29(1)(a)(1),* "[T]o grant Merren's claim [would be] to penalize Lear Siegler [the Michigan employer], who would then pay Merren from its own account without any contribution from another 'employer.' "

But in the instant case, no such restrictive provisions exist in § 29(3). The "requalification" requirement under § 29(3) has no adverse effect upon non-Michigan employers. Because *Merren* deals with altogether different substantive issues, its holding does not affect the question of whether a claimant can requalify outside the State of Michigan.

he refused an offer by American Screw Works of his former job.

Section 29(1) of the act states that "[a]n individual shall be disqualified for benefits in all cases in which he * * * (e) Has failed without good cause to accept suitable work when offered him * * * ". Section 29(6) of the act defines "suitable work" as follows:

"In determining whether or not any work is suitable for an individual, the commission shall consider * * * the distance of the available work from his residence." MCLA 421.29(6); MSA 17.531(6).

Was American Screw Works' offer of reemployment to Bingham an offer of "suitable work" within the meaning of § 29(6)? The legal answer turns on the statutory meaning of the word "residence" in § 29(6), *i.e.* did Bingham have "good cause" to refuse the offer because of the unreasonable distance between the locality of the reemployment offer and his "residence"?

The word "residence" is not defined in the act. In the absence of a statutory definition of a term,

"it is an accepted rule of construction, that words of a statute are to be given their plain and ordinary meaning, for it is to be presumed that the legislature, not having indicated otherwise, so intended." 22 Callaghan's Michigan Civil Jurisprudence, § 121, p 479.

See *Grand Rapids Gravel Co v Department of Treasury,* 14 Mich App 677, 681–682; 166 NW2d 53 (1968).

The common sense, "plain and ordinary" meaning of the word "residence" is clear: a person's "residence" is where that person actually lives. Bingham lived in Pineville, Kentucky. A job offer

in Farmington, Michigan is an unreasonable distance from Pineville, Kentucky and therefore not "suitable work" under § 29(6). Accordingly, Bingham should not be disqualified for refusing such a job offer.

The legal answer to the meaning of "residence" substantiates the common sense answer. In *Wright v Genesee Circuit Judge,* 117 Mich 244, 245; 75 NW 465 (1898), this Court defined the ordinary meaning of "residence" as follows:

> "Residence means the place where one resides; an abode; a dwelling or habitation; especially; a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining. *Estate of Heron,* 6 Phila 87, 90 (Register's Ct, 1865)."

In *In re Scheyer's Estate,* 336 Mich 645, 651–652; 59 NW2d 33 (1953), in discussing the ordinary meaning of "residence", we affirmed the definition articulated in the *Wright* case. In addition, we declared:

> "Throughout the definitions of 'home' and 'residence,' as herein quoted above, runs the thought of permanence, of a place to which one returns, a place where one intends to remain, a haven or domicile. *Suggested, too, is the thought of 1 unit or 1 place as contrasted with several. One cannot be permanently located in more than 1 place;* one cannot be domiciled in more than 1 place; *one cannot intend to remain for an extended period of time in more than 1 place."* (Emphasis added.)

Applying this definition to the facts of this case, it is clear that Bingham's "residence", his "settled or permanent home," where he "intends to remain", is Pineville, Kentucky. Therefore, under

§ 29(1)(e) read in conjunction with § 29(6), Bingham was not disqualified for refusing American Screw Works' reemployment offer because his refusal was with "good cause"; the offer was not an offer of "suitable work" because the locality of the reemployment offer (Farmington, Michigan) was clearly an unreasonable distance from his Pineville, Kentucky residence. We hold that the claimant was not disqualified.

The Court of Appeals, in a 2-to-1 decision, however, held that Bingham was disqualified under § 29(1)(d) for having refused an offer of "suitable work" without "good cause". The Court reached its holding by ruling, as a matter of law, that "residence" in § 29(6) "means both the locality in which the claimant resides at the time the offer of the job was made *and* the localities in which claimant resided during the period he earned the base period credit weeks". (Emphasis added.) 57 Mich App 21, 29.

We find the Court of Appeals holding is clearly erroneous.

First, the Court's unorthodox interpretation of the word "residence" to mean that a claimant may reside in two (or more) places rather than one place must be rejected in light of the definition of the word "residence" pronounced by this Court in *Wright v Genesee Circuit Judge* and *In re Scheyer's Estate,* the definition we must apply in this case because of the lack of a statutory definition of the term. Furthermore, to interpret "residence" as the Court of Appeals does would be essentially amending § 29(6) to reach a result contrary to that mandated by the plain language fixed by the Legislature. This we cannot do.

"It is not the proper function of the court to amend

the statute to broaden or extend the disqualifications fixed, in plain language, by the legislature." *Thomas v Employment Security Commission,* 356 Mich 665, 669; 97 NW2d 784 (1959).

Second, the result of the Court of Appeals holding is that where an offer of reemployment is made to an employee who has moved and established residence in a locality outside the radius of what constitutes a reasonable distance from the locality where he earned his base credit weeks, he must accept such an offer or be disqualified by the commission.[7] This result, which would effectively discourage (if not altogether impede) an involuntarily as well as voluntarily unemployed person who desires to exercise his fundamental right of freedom of movement to seek a job where it is best for him within our private enterprise system, is clearly contrary to those statutory provisions which enable the MESC to enter into reciprocal interstate agreements in recognition of the mobility of labor and must, therefore, be rejected.[8]

---

[7] This would be true not only with respect to an eligible claimant who has been disqualified, and then requalified, under the act, but also to an eligible claimant who has never been disqualified under the act *(i.e.* one who is laid off). The act itself makes no distinction as to the eligibility or disqualification of those unemployed persons who are disqualified and then requalify and those unemployed persons who are never disqualified.

[8] The Legislature, in the preamble to the act, declared, in part, that our unemployment compensation law was "An act * * * to enter into reciprocal agreements and to cooperate with agencies * * * of other states charged with the administration of any unemployment insurance law". In addition to the preamble, the provisions of § 11 of the act, MCLA 421.11; MCLA 17.511, enable the MESC to enter into reciprocal agreements with other states to pay interstate claims. *See,* in particular, § 11(c), § 11(d), § 11(f), § 11(g). Accordingly, the commission has entered into two basic types of agreements: (1) the Interstate Benefit Payment Plan (formally accepted by the then Michigan Unemployment Compensation Commission at the Interstate Conference of Unemployment Compensation Agencies, November 28, 1937); (2) the Interstate Agreement for Combining Wages (both the Basic Interstate Plan for Combining Wages and the Extended Interstate Plan for Combining Wages); *see* MESC Manual, Appendices 1 and 2 to Chapter

## Third, this result of the Court of Appeals hold-

8600–8699, Part V, Unemployment Compensation Interstate Wage Combining Plans.

The Interstate Benefit Payment Plan is accurately described as follows:

*"This plan makes it possible for individuals to collect unemployment insurance benefits from a state in which they have qualifying wages, although they are not present in that state.* The procedures developed under the plan provide that each state may act as an agent in taking claims for all other states. Thus, each state will pay benefits computed on the basis of wages earned under its law and determined under its benefit formula on claims taken in the local offices of any other state acting as an agent for the liable state. The plan is based on the principle that benefit payments to a multi-state worker are to be subject to the same requirements that would apply if he were actually in the state from which he claims benefits. In taking a claim from an unemployed worker, the 'agent' state does not and has no authority under the plan to make decisions regarding the worker's rights under the law of the 'liable' state. The 'agent' state merely obtains the necessary information from the worker and forwards it to the 'liable' state in order that the latter may make its own determination as to eligibility, and amount and duration of benefits in accordance with its own law. Before claiming benefits from any other state, *the worker is required to exhaust whatever benefit credits he may have in the state in which he becomes unemployed.* He may then file claim for benefits against any other state or states in which he may have acquired credits. In the event a multi-state worker has benefit rights under the laws of two or more 'liable' states, benefits are paid by those states in the same chronological order as the worker earned his benefit credits in the respective states." (Emphasis added.) 1B Commerce Clearing House, Unemployment Insurance Reports, ¶ 2050, p 4586 (1976). These agreements exist between all states. See 1B Commerce Clearing House, Unemployment Insurance Reports, ¶ 2050, pp 4585, 4586 (1976).

The Court of Appeals, in its conclusory remarks, stated:

"We are not unaware of the provisions of § 11 of the act with respect to cooperative agreements which the commission may enter into with similar agencies in other states. Clearly, our holding herein will in no way affect any reciprocal agreement to pay a pro rata share of benefits based upon the respective credit weeks earned in the various states where the claim is made under the law of the other state." 57 Mich App 21, 29–30.

This conclusion may be technically accurate as to the Basic Interstate Agreement for Combining Wages in which the MESC has agreed to pay a pro rata share of benefits for the claimant who has worked in two or more states (including Michigan) but who *is not eligible for benefits in any state* because of lack of qualifying wages. *See* MESC Manual, Appendix 1 to Chapter 8600–8699, Part V. The kind of claimant protected by these agreements, is not affected by the Court of

ing is inconsonant with the underlying law and spirit of the Federal-state unemployment compensation system. The Employment Security Amendments of 1970, Internal Revenue Code of 1954, speak directly to this point. Section 3304(a)(9)(A) states:

"[C]ompensation shall not be denied or reduced to an individual solely because he files a claim in another State * * * *or because he resides in another State* * * * at the time he files a claim for unemployment compensation." 26 USC 3304(a)(9)(A). (Emphasis added.)[9]

The need for conformity to basic Federal law in this area is illustrated by *California Department of Human Resources Development v Java,* 402 US 121; 91 S Ct 1347; 28 L Ed 2d 666 (1971), where the Supreme Court enjoined the withholding of employee benefits pending employee appeal as violative of § 303(a)(1) of the Social Security Act, 42 USCA 503(a)(1), which requires administration of state unemployment compensation laws in a

Appeals holding because such a claimant, never having been eligible, does not face the prospect of being disqualified after he moves and refuses the reemployment offer. However, the Court of Appeals fails to mention the Interstate Benefit Payment Plan which is designed to benefit the unemployed person who *has* earned qualifying base credit wages in Michigan and thereafter exercises his right to freedom of movement in the labor market by moving from the locality where he earned base credit weeks to another state where he registers for work, seeks work, and is "able and available for work," or the Extended Interstate Plan for Continuing Wages, which is designed to benefit the unemployed person who moves to another state, finds employment, and then becomes unemployed again. *See,* MESC Manual, Appendix 2 to Chapter 8600–8699, Part V. The obvious purpose of *these* agreements is to provide benefits for the eligible claimant who has earned qualifying base credit weeks in Michigan, moved to another state, and become eligible for benefits in the other state. The Court of Appeals holding, which discourages an otherwise eligible claimant from exercising his right to freedom of movement within the labor market, clearly undermines *these* agreements.

[9] As we noted in fn 5, this Federal legislation became effective January 1, 1972. *See* Annotations, 26 USCA 3304(a)(9)(A) (Pocket Part 1976), p 171.

manner "reasonably calculated to insure full payment of unemployment benefits when due". 402 US 121, 125.

However, under the Court of Appeals holding, an unemployed person who moves to another state (outside the radius of what constitutes a "reasonable distance" from the Michigan locality where he earned base credit weeks) and becomes eligible for benefits there, would have to accept a reemployment offer or be disqualified by the MESC. In effect, such a person faces the prospect of being denied compensation, "because he resides in another state". This kind of ruling would, therefore, frustrate the Federal policy expressed in 26 USC 3304(a)(9)(A) as effectively as the construction enjoined in *Java.* If challenged, it is likely that it would be enjoined to secure Federal conformity. But we need not fear this prospect because our holding that the common, ordinary meaning of "residence" applies to § 29(6) vindicates, rather than frustrates, the Federal scheme.

Finally, the Court of Appeals reached its holding that "residence" in § 29(6) means either a claimant's residence when the job offer is made or a claimant's residence at the time he earned his base credit weeks on the basis of erroneous statutory construction. First, the court argued that it would be anomalous to say the eligibility requirement in § 28(1)(c) conjunctively required seeking work *"either* at a locality in which he earned his credit weeks or at a locality where the commission finds available work" and not to rule the same way with respect to the disqualification in § 29(1)(d). However, the fact of the matter is that in part II we have already held that § 28(1)(c) is clearly disjunctive and not conjunctive. Consequently, there is no anomaly.

Second, the Court of Appeals feared an anomaly between § 29(6) and § 28(1)(a)(2). Section 28(1)(a)(2) provides:

"Except for period of disqualification, the requirement that the individual shall seek work may be waived by the commission where it finds that suitable work is unavailable both in the locality where the individual resides and in those localities in which the individual has earned base period credit weeks." MCLA 421.28(1)(a)(2); MSA 17.530(1)(a)(2).

The Court of Appeals argued:

"This language clearly indicates that suitable work may exist not only in the locality where the claimant resides but also at the localities at which claimant earned credit weeks. We are thereby compelled to conclude that the term 'residence' as used in § 29(6) means both the locality in which the claimant resides at the time the offer of the job was made and the localities in which claimant resided during the period he earned the base period credit weeks." 57 Mich App 21, 29.

The Court of Appeals argument, although superficially plausible, is fundamentally erroneous. First, § 28(1)(a)(2), instead of suggesting that § 29(6) refers to two (or more) residences, clearly recognizes that the locality of residence and where the individual earned base period credit weeks may be two separate localities. Section 29(6), of course, considers only the former, or locality of residence. Second, the locality of residence and the locality where base credit weeks are earned may be two separate places but not so distant from each other that work at the latter would not be within reasonable distance from the claimant's residence. Thus, § 28(1)(a)(2) and § 29(6) can be logically interpreted together.

IV—CONCLUSION

Because of the clear language in the Michigan Employment Security Act, the interstate agreements accompanying it, and the Federal-state dimension integral to it, we hold that claimant Bingham, a Kentucky worker who left a Michigan job because he could not find adequate housing for his family at a price he could afford, returned to Kentucky, registered for work with the appropriate employment office there, diligently sought and made himself available for suitable work, but turned down a job offer from his former Michigan employer due to the distance from his Kentucky residence, (1) requalified for benefits after serving the period of disqualification under the act, and (2) was not disqualified for refusing his former employer's job offer because the offer was not an offer of "suitable work" and was therefore rejected with "good cause" due to the fact that the job was too far distant from his residence.

We reinstate the administrative determination of the Michigan Employment Security Commission, and reverse the trial court and the Court of Appeals.

No costs, a public question.

KAVANAGH, C. J., and LEVIN, J., concurred with WILLIAMS, J.

RYAN, J., took no part in the decision of this case.

FITZGERALD, J. *(concurring).* The result achieved by reversing the Court of Appeals in this case is contrary to one of the most basic policies underlying the Michigan Employment Security Act, which is to encourage employers to provide stable em-

ployment. MCLA 421.2; MSA 17.502. To extend
benefits to persons who voluntarily leave regular
employment in this state to become nonresidents
does not encourage stable employment practices
and it further reduces funds available to those
who are involuntarily unemployed.

We must, however, apply the statute as written.
As was said in *Thomas v Employment Security
Commission,* 356 Mich 665, 669; 97 NW2d 784
(1959):

"It is not the proper function of the court to amend
the statute to broaden or extend the disqualifications
fixed, in plain language, by the legislature. Whether
one in claimant's situation ought to be disqualified is a
question of policy for the legislature, not a judicial
question to be determined by the court."

For this reason, I reluctantly concur in reversal
of the Court of Appeals.

LINDEMER, J., concurred with FITZGERALD, J.

COLEMAN, J. *(to remand).* The basic problem is
that this unemployment compensation case has
been treated as a § 29(1)(d)[1] case in the courts
below, but this Court has treated it as a § 29(1)(e)[2]
case. Without adequate supporting facts and rele-
vant findings of law, the nature of the case has
been recast by this Court. The assumptions upon
which we are asked to decide the case may or may
not be valid, but we are not adequately informed.

Therefore, we would remand to the appeal board
for a clear determination of whether this is a
§ 29(1)(d) or a § 29(1)(e) matter and a finding of
facts in support of the conclusion.

[1] MCLA 421.29(1)(d); MSA 17.531(1)(d).

[2] MCLA 421.29(1)(e); MSA 17.531(1)(e).

Plaintiff voluntarily quit his job on November 17, 1969. He had come from Pineville, Kentucky and worked for defendant American Screw Products Company for ten months. His reason for going back to his home in Pineville was given as his inability to find suitable housing in Michigan. The employer was without fault.

On December 2, 1969, plaintiff filed a benefit claim. The Michigan Employment Security Commission (MESC) issued a notice of determination holding that plaintiff left his job without good cause. He was disqualified from receiving benefits until after a six weeks requalification period which ended January 10, 1970. On March 9, 1970, the company protested the determination and sent this notice to plaintiff:

"Attached is a copy of a petition which has been filed with the Michigan Employment Security Commission.

"On behalf of American Screw Products Company you are requested to report for work at your scheduled hours in accordance with the notice included in the petition for redetermination which has been sent to the commission.

"The employer expects you to return to work in accordance with this notice and a failure to report for your regular job would indicate that you are not available for suitable work and the act is not intended for the benefit of persons who refuse to accept suitable work or who refuse to accept their regular job."

Plaintiff failed to respond in any way. MESC reaffirmed its determination on April 5 and the company appealed to a referee who affirmed MESC on September 29, saying:

"The issues involved in this appeal concern whether the claimant failed without good cause to report to his former employer within a reasonable time after notice

from such employer for an interview concerning available suitable work, coming under the provisions of § 29(1)(d) of the act.

"A further issue concerns whether the claimant was available for work and eligible for benefits in this respect under § 28(1)(c) of the act."

The referee said the offered work "was not suitable due to the distance from [Bingham's] residence as provided under § 29(6) of the act and, accordingly, no disqualification is imposed under § 29(1)(d) of the act". The referee also concluded that "[u]nder the circumstances, and inasmuch as the claimant has not placed any undue restrictions on his availability, the claimant is deemed to have been available for work under § 28(1)(c)".

The company filed an appeal and the appeal board affirmed on March 24, 1971 by a 2-to-1 vote. The two members said simply that the referee's decision "is in conformity with the law and facts".

The company appealed this decision to the Oakland circuit court which reversed. The judge ruled that claimant

"is disqualified from receiving benefits under the act by failing to requalify and by failing to accept suitable employment when offered. I agree with the conclusions of the employer that the stated purpose of the act neither in fact or law would neither be carried out. Neither would be carried out."

MESC was granted leave to appeal this decision. In an opinion issued November 29, 1974, the Court of Appeals affirmed the circuit court but limited its review to the question of whether Bingham was disqualified under § 29(1)(d). The Court's analysis led to a conclusion that

"the offer of the same job at the same location that

claimant voluntarily left without good cause attributable to the employer or employing unit is suitable work within the meaning of § 29(6). Since plaintiff does not claim that the old job was unsuitable for any reason than the distance from the locality in which he presently resides, the work offered was suitable work as a matter of law. Plaintiff did not have 'good cause' to refuse to report to his former employer and thus he is disqualified under § 29(1)(d) by reason of his failure to report to his former employer upon receiving notice of the availability of his old job." 57 Mich App 21, 29; 225 NW2d 199 (1974)

A difference in analysis is required between § 29(1)(d) matters ("failed without good cause to report * * * for an interview") and § 29(1)(e) ("failed without good cause to accept suitable work when offered").

The employer's March 9 letter appears to be an offer of work but the panels and persons below have labeled it an offer to interview, although sometimes treating it under § 29(1)(e) standards. The result is at best confusing.

Therefore, we would remand to the appeal board for a clear determination of whether this is a § 29(1)(d) or § 29(1)(e) matter. If the former, there should be consideration of whether Bingham had good cause for failing to respond to the March 9 letter. If he claims that the interview would have concerned unsuitable work, the company should be afforded the opportunity to meet its burden of proof. If the latter, there should be consideration of whether the work offered was suitable. A conclusion should be reached by taking into account each factor of § 29(6) individually. This should entail a very careful and specific finding of fact prior to a conclusion of law.

Remand.