BINGHAM v AMERICAN SCREW PRODUCTS COMPANY

### Opinion of the Court

1. Unemployment Compensation—Determination—Employment Security Commission—Appeal and Error—Statutes.

    A determination by the Employment Security Commission that a plaintiff had requalified for unemployment compensation benefits was not preserved for circuit court review where the defendant neither appealed nor sought a redetermination within the statutory 15-day period (MCLA 421.32a).

2. Unemployment Compensation—Available Work—Suitable Work—Failure to Report—Good Cause—Residence of Claimant.

    An individual shall be disqualified for benefits in all cases in which he, being unemployed, has failed without good cause to report to his former employer within a reasonable time after notice from said employer for an interview concerning available suitable work with said former employer; in determining whether or not any work is suitable for an individual, the commission shall consider among other factors the distance of the available work from his residence (MCLA 421.29[1][d], 421.29[6]).

3. Unemployment Compensation—Offer of Employment—Suitable Work—Residence of Claimant—Statutes.

    The "residence" of a claimant for unemployment compensation,

---

### References for Points in Headnotes

[1] 76 Am Jur 2d, Unemployment Compensation §§ 93, 94.

[2–6] 76 Am Jur 2d, Unemployment Compensation §§ 68–77.

Circumstances of leaving employment, availability for work, or nature of excuse for refusing re-employment as affecting right to social security or unemployment compensation. 165 ALR 1382.

"Availability for work," under unemployment compensation statute, of claimant who undertakes to restrict willingness to work to certain hours, types of work, or conditions, not usual and customary in the occupation, trade, or industry. 25 ALR2d 1077.

Right to unemployment compensation of claimant who refuses nonunion employment. 56 ALR2d 1015.

Unemployment compensation: eligibility as affected by claimant's refusal to work at particular times or on particular shifts. 35 ALR3d 1129.

when determining whether an offer of employment constitutes suitable work for the claimant, is both the locality in which the claimant resided at the time his former employer offered him the employment and the localities in which the claimant resided during the period he earned base period credit weeks (MCLA 421.29[6]).

4. UNEMPLOYMENT COMPENSATION—AVAILABLE WORK—FAILURE TO REPORT—GOOD CAUSE.

A claimant, who voluntarily and without good cause attributable to his employer quit his job in Michigan and returned to Kentucky, was disqualified from receiving unemployment compensation where he did not have good cause to refuse to report to his former employer upon receiving notice of the availability of his old job in Michigan.

DISSENT BY BRONSON, P. J.

5. UNEMPLOYMENT COMPENSATION—SUITABLE WORK—EMPLOYMENT SECURITY COMMISSION—RESIDENCE OF CLAIMANT—APPEAL AND ERROR.

*Job suitability for a claimant for unemployment compensation is a question reserved for the Employment Security Commission and the choice of a residence for a claimant when determining job suitability is properly left to the commission, to be reversed only if not supported by competent, material, and substantial evidence on the whole record.*

6. UNEMPLOYMENT COMPENSATION—OFFER OF EMPLOYMENT—SUITABLE WORK—RESIDENCE OF CLAIMANT—STATUTES.

*The "residence" of a claimant for unemployment compensation, when determining whether an offer of employment constitutes suitable work which would disqualify the claimant from receiving unemployment compensation if he refused the employment, is his residence at the time the offer of employment is made; therefore, an offer to re-employ a claimant in Michigan was not an offer of suitable work where the claimant resided in Kentucky at the time the offer was made, and the claimant was not disqualified from receiving benefits by refusing the offer (MCLA 421.29[1][d], 421.29[6]).*

Appeal from Oakland, William John Beer, J. Submitted Division 2 June 5, 1974, at Detroit. (Docket No. 18667.) Decided November 27, 1974. Leave to appeal granted, 393 Mich 805.

Claim by Arlie K. Bingham against American Screw Products Company for unemployment compensation. Grant of compensation affirmed by the Employment Security Commission Appeal Board. Defendant appealed to the circuit court. Reversed. The Employment Security Commission appeals by leave granted. Affirmed.

*Goodenough, Smith & May,* for American Screw Products Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for the Employment Security Commission.

Before: BRONSON, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Plaintiff was employed by defendant American Screw Products Company from February 17, 1969 to November 17, 1969, at which date he voluntarily and without good cause attributable to his employer quit his job and returned to his home in Pineville, Kentucky. The reason plaintiff gave for leaving his job and returning to Kentucky was that he had been unable to find a suitable home for his family in the Detroit area at a price he could afford despite attempts to find adequate housing during his stay in Michigan.

In early December 1969 plaintiff filed a claim for unemployment compensation with defendant Michigan Employment Security Commission. Defendant commission notified defendant employer of the claim and sought certain financial data. De-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

fendant employer indicated that while November 17, 1969 was the last day worked by plaintiff, plaintiff was still carried on their records and that the claims form was the only indication they had had that plaintiff did not intend to return. On February 20, 1970, the commission determined that plaintiff claimant was disqualified from receiving benefits from the week ending November 22, 1969 until he had completed the six-week requalification requirements, which he had completed on January 10, 1970 and that claimant was then entitled to benefits for a total of twenty weeks.

On March 9, 1970 defendant employer petitioned for a redetermination asserting that plaintiff had been offered his old job and that he had failed to report for said job. On April 3, 1970 the commission determined that the plaintiff had good cause for not reporting for the offered work and thus was not disqualified under MCLA 421.29(1)(d); MSA 17.531(1)(d). Defendant company appealed the April 3 redetermination to the referee, who affirmed the commission's determination that plaintiff was not disqualified by his refusal to accept the offered work. On appeal to the appeal board, the referee was affirmed by a vote of two to one. Defendant company then appealed to the circuit court, which held that plaintiff was disqualified from benefits by failing to accept suitable employment when offered. The Michigan Employment Security Commission appeals by leave granted.

I

We are here concerned only with the question of whether plaintiff was disqualified by reason that he refused to accept defendant employer's offer of

his old job. The question whether plaintiff had requalified by seeking employment in Kentucky was decided by the February 20, 1970 determination. Since defendant company neither appealed nor sought a redetermination on that question within the fifteen-day period specified by MCLA 421.32a; MSA 17.534(1), the question was not properly before the circuit court. See *Roman Cleanser Co v Murphy,* 386 Mich 698; 194 NW2d 704 (1972).

Defendant company argues and the circuit court held that plaintiff was disqualified from benefits under MCLA 421.29(1)(d); MSA 17.531(1)(d), which provides:

"An individual shall be disqualified for benefits in all cases in which he:

\* \* \*

"(d) Being unemployed has failed without good cause to report to his former employer or employing unit within a reasonable time after notice from said employer or employing unit for an interview concerning available suitable work with said former employer \* \* \* "

The commission, on the other hand, argues that the company's offer of the old job was not "suitable work". The commission relies upon the definition of the term "suitable work" found in MCLA 421.29(6); MSA 17.531(6), which provides:

"In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

The commission argues that the term "residence"

as used therein means the claimant's residence at the time the work was offered; and therefore, plaintiff herein, who had taken up residence in Kentucky, had good cause to refuse to take the Michigan job offer because of the distance of the available work from his residence.

In response to this argument defendant company argues that the term residence means the place the claimant resided at at the time of his termination of his prior employment rather than at the time of the job offer.

## II

The question raised in this appeal appears to be one of first impression. Neither *Merren v Employment Security Commission,* 3 Mich App 383; 142 NW2d 493 (1966); *affirmed by an equally divided Court,* 380 Mich 240; 156 NW2d 524 (1968), nor *Roman Cleanser Co v Murphy,* 29 Mich App 155; 185 NW2d 87 (1970), *rev'd,* 386 Mich 698; 194 NW2d 704 (1972), are dispositive of the issue raised herein. In both those cases the claimant left his Michigan employment to accept permanent full-time employment with another employer and thus the decision in both cases was based upon the ability of the Michigan employer to secure contribution from the out-of-state employer. Indeed, this Court in *Roman Cleanser* specifically indicated that it did not decide whether the offer of employment constituted "suitable employment" or whether the failure to accept such employment disqualified the claimant. The Supreme Court in *Roman Cleanser* likewise did not decide the merits of this question, but rather reversed on the basis that the issue was not properly raised since neither a timely redetermination had been petitioned nor had there been good cause shown why a

timely redetermination had not been taken. Thus the questions decided in the initial determination were final and unappealable and the subsequent redetermination was appealable only as to those issues not made final by the initial determination.

### III

The question of whether plaintiff was disqualified under § 29(1)(d) of the Employment Security Act[1] is dependent upon whether he had "good cause" to refuse the offer of his old Michigan job. The question of "good cause" in turn is dependent upon whether the job offered was "suitable work" within the meaning of the Employment Security Act.

In defining "suitable work" in § 29(6), as quoted above, the Legislature set forth a number of factors which the commission is to consider in determining whether any work is suitable for an individual. The thrust of the legislative mandate would appear to be that the question of the suitability of the work must be determined by a balancing of these factors as they apply to the individual claimant. Thus a given job might well be deemed to be suitable work for one individual and yet unsuitable to another. The Legislature would seem to be saying that an individual should not be disqualified from benefits if he refuses to take a job which would require the claimant to incur conditions of employment which are unreasonable in light of his prior employment conditions.

This is not to say that the Legislature has mandated the job offered must be equal in every respect to the prior conditions under which the claimant worked, nor that the pay is the same or

---

[1] MCLA 421.1; MSA 17.501 *et seq.*

better, nor that the work will be as conveniently situated to claimant's place of abode. These factors must be balanced against his length of unemployment and the prospect of securing similar work in his locale. Indeed, there is clear statutory language which would indicate that, under certain circumstances, the claimant must be willing to suffer the hardship of taking a distant job in order to remain qualified for unemployment benefits. A clear expression of such a legislative intent is found in § 28(1)(c) of the act which provides that an unemployed individual is eligible only if the commission find that:

"He is able and available to perform full-time work of a character which he is qualified to perform by past experience or taining, and of a character generally similar to work for which he has previously received wages, and he is available for such work, full time, either at a locality at which he earned wages for insured work during his base period or at a locality where it is found by the commission that such work is available."

Section 28(1)(c) mandates that the claimant must be available for work *either* at a locality in which he earned his credit weeks or at a locality where the commission finds available work. Clearly, in the instant situation the Michigan location of his old job is the locality in which he earned his credit weeks and the job offer also makes Michigan the locality of available work of a character which claimant is qualified to perform. It would be anomalous to say that one must be available for the Michigan work in order to qualify for benefits under § 28(1)(c) and yet to say that defendant would not be disqualified under § 29(1)(d) by his refusal to accept the offer of his old job.

We also note that in § 28(1)(a)(2) the Legislature provided:

"Except for period of disqualification, the require-ment that the individual shall seek work may be waived by the commission where it finds that suitable work is unavailable both in the locality where the individual resides and in those localities in which the individual has earned base period credit weeks."

This language clearly indicates that suitable work may exist not only in the locality where the claim-ant resides but also at the localities at which claimant earned credit weeks. We are thereby compelled to conclude that the term "residence" as used in § 29(6) means both the locality in which the claimant resides at the time the offer of the job was made and the localities in which claimant resided during the period he earned the base period credit weeks. It is only in this fashion that the provision of § 28 and § 29 can be read in harmony with each other.

It therefore follows that the offer of the same job at the same location that claimant voluntarily left without good cause attributable to the employer or employing unit is suitable work within the mean-ing of § 29(6). Since plaintiff does not claim that the old job was unsuitable for any reason other than the distance from the locality in which he presently resides, the work offered was suitable work as a matter of law. Plaintiff did not have "good cause" to refuse to report to his former employer and thus he is disqualified under § 29(1)(d) by reason of his failure to report to his former employer upon receiving notice of the availability of his old job.

IV

We are not unaware of the provisions of § 11 of

the act with respect to cooperative agreements which the commission may enter into with similar agencies in other states. Clearly, our holding herein will in no way affect any reciprocal agreement to pay a pro rata share of benefits based upon the respective credit weeks earned in the various states where the claim is made under the law of the other state. However, where, as here, the claim is made directly against the fund of this state and pursuant to this state's statutory scheme, we are compelled to conclude that this state's requirements with respect to qualification and disqualification must be given full effect.

We do not believe that the Legislature intended that the employers of this state be burdened with the expense of supporting individuals in their voluntary quest for greener pastures in another state while available work is offered to said persons in this state. If the commission's position were accepted it would merely encourage workers of this state to leave their gainful employment here and take up residence in some locality in which the likelihood of finding employment is slight. This situation does not appear to be mere speculation, since counsel for defendant company indicated during oral argument that three of its fifty-five employees have followed plaintiff's lead in the period since the appeal board's decision in this case.

The trial court is affirmed with respect to its determination that plaintiff was disqualified from the date of his failure to report to the defendant employer for the offered work. No costs, a public question.

J. H. GILLIS, J., concurred.

BRONSON, P. J. *(dissenting).* I am in disagree-

ment with the construction placed upon MCLA 421.29(1)(d); MSA 17.531(1)(d) by my colleagues. They hold that plaintiff Bingham is disqualified from receiving unemployment compensation benefits because he failed to accept "suitable work" as offered by his former employer.

The question whether work is "suitable" is governed by section 29(6) of the Employment Security Act,[1] which lists several factors to be considered by the Employment Security Commission in making that determination, one of which is "the distance of the available work from [the employee's] residence". My colleagues read the term "residence" in that section to include the locality in which the claimant resided during the period in which he earned base period credit weeks. They then find that, even though defendant-employer American Screw Products' offer of employment was made to Bingham while he was residing in Kentucky, it was an offer of "suitable work" under the statute because Bingham's place of residence for purposes of § 29(6) was Michigan.

In support of this position, the majority first cites § 28(1)(c) which, as they correctly point out, mandates that the claimant must be available for work either at a locality in which he earned his credit weeks or at a locality "where it is found by the commission that [suitable] work is available". They then state that the defendant employer's job offer makes Michigan the locality of available work, and conclude that Bingham would be required to be available for work in Michigan in order to qualify for benefits under § 28(1)(c).

It is true that the job offer makes Michigan *one* locality of available work. However, the job offer does not make Michigan the *only* locality of avail-

[1] MCLA 421.1; MSA 17.501 *et seq.*

able work. The commission is authorized to require claimant to make himself available for work in those localities in which it finds suitable work available. The commission could very well, and in fact in this case did, find that Bingham was, "able and available to perform full-time work * * * at a locality where it is found by the commission that such work is available", namely Pineville, Kentucky. To say that employer's job offer makes Michigan a locality where suitable work is available for purposes of § 28(1)(c) is not to say that it is the *only* such locality. This section can be interpreted so as to avoid the anomaly which confronts my colleagues; for Bingham can qualify for benefits under § 28(1)(c) by holding himself ready to accept employment in Pineville, Kentucky and at the same time not be disqualified under § 29(1)(d) for refusing to accept the job offer of his former employer. Nothing in § 28(1)(c) mandates the conclusion that Bingham's place of residence is Michigan for purposes of § 29(6). It can be interpreted to suggest quite the contrary.[2]

The other statute relied upon by the majority is § 28(1)(a)(2), which empowers the commission to waive the requirement that the claimant seek work if the commission finds that suitable work is unavailable both where the claimant resides and where he earned base period credit weeks. This provision is said to support the conclusion that "residence" as used in § 29(6) means both the locality in which the claimant resides at the time the job offer is made and localities in which claimant resides when he earns his credit weeks.

---

[2] In fact, it appears that the Legislature, in enacting § 28(1)(c), expressly provided for this case, since it granted the commission the authority to qualify a claimant for benefits so long as he is prepared to accept suitable employment wherever he happens to register for benefits.

This section recognizes, as the majority candidly admits, that "suitable work" may exist both where the claimant resides and where he earned base period credit weeks. However, that fact does not support the conclusion that employer's job offer constituted an offer of "suitable work" within the meaning of § 29(6). The fact that suitable work may have existed in the locality where claimant earned base period credit weeks *when they were earned* does not necessarily mean that the same work is still "suitable" when claimant attempts, at some later date, to qualify for benefits.

In distinguishing between the locality of a claimant's residence and localities where credit weeks are earned in § 28(1)(a)(2) and in differentiating between localities where credit weeks are earned and other localities where suitable work may be found in § 28(1)(c), the Legislature has indicated that the concept of "suitability" is intended to be a flexible one. Those provisions in § 28 also demonstrate that the Legislature meant to distinguish between the residence of claimant and the location in which he earned credit weeks or in which suitable work is to be found. Such distinctions do not survive the analysis presented in the majority opinion, which provides claimants with residences in each location.

To maintain that "residence" as used in § 29(6) means *both* the locality in which the claimant resides at the time the job offer is made *and* the localities in which claimant resided during the period he earned credit weeks is to hold that for purposes of the statute claimants reside at more than one place at a time. More to the point here, it is a holding that claimants reside in as many locations as is necessary to allow former employers to offer work at a location where the employee

formerly, but for purposes of this act, still legally resides, work which the employer can confidently assume the employee cannot possibly accept but which is "suitable" and therefore must be accepted by the employee. The employer can thus very easily escape his responsibility under the act to pay compensation benefits. It seems more reasonable to conclude that the suitability of a job offer for purposes of § 29(1)(d) should be decided on the basis of the information available and the status of the various parties at the time the offer is made. Otherwise, the decision becomes artificial, unreliable, and, in many cases, unfair.

The majority suggests that its decision will discourage employees from leaving gainful employment in Michigan "to take up residence in some locality in which the likelihood of finding employment is slight". Assuming for the moment that an employee who has gainful employment would realistically desire unemployment as an alternative—an assumption I find hard to swallow, especially under present economic conditions—before a Michigan employer is required to pay benefits, the employee must requalify under § 29(3). To do so, he must, in effect, either find another job for the requisite six-week period or satisfy all the requirements of § 28 to qualify for benefits, including holding himself ready to accept employment. Thus the Michigan employer's obligation to support such an employee's quest for "greener pastures" is hardly automatic.

It seems more likely that *employers* will profit from the majority's decision, because they can avoid ever incurring an obligation to provide benefits by merely making a job offer the employee is forced to refuse. Such a result is at odds with one of the purposes of the Employment Security Act to

"levy and provide for contributions from employers".

The majority decision also has the effect of eliminating "distance from residence" as a factor for the commission to consider in deciding the question of job suitability. They do not deny that Bingham's residence is Pineville, Kentucky. If so, then to hold that a job offer in Michigan is "suitable" prevents the commission from considering distance from residence as a determinative factor. On the other hand, by providing Bingham with *another* residence—the locality where he earned his credit weeks—this Court forces the commission to choose Michigan rather than Pineville, Kentucky as the claimant's "residence" in determining suitability. I do not think that this Court is at liberty to dictate such a result, because the question of job suitability is reserved for the commission. If there is a choice to be made—and I think the majority's provision of at least two claimant residences requires that such a choice be made— then that choice is properly left to the commission, to be reversed only if "not supported by competent, material and substantial evidence on the whole record". See § 38.

I conclude that the term "residence" in § 29(6) means "residence at the time the offer of employment is made". Consequently, I would hold that defendant-employer's job offer was not suitable and plaintiff was not disqualified from receiving benefits as a result of refusing it. I would accordingly reverse the decision of the trial court and reinstate the findings of the appeal board.