DUEWEKE v MORANG DRIVE GREENHOUSES, INC.

Docket No. 78-2487. Submitted April 5, 1979, at Detroit.—Decided June 20, 1979. Leave to appeal applied for.

Plaintiff Eric Dueweke voluntarily quit his job with defendant Morang Drive Greenhouses, Inc. in May, 1975. Plaintiff was disqualified from unemployment benefits for a period of six weeks because of his voluntary termination of his employment, pursuant to the Michigan Employment Security Act. Following the disqualification period, defendant Michigan Employment Security Commission made an initial determination that plaintiff was entitled to receive benefits. Defendant Morang promptly notified the commission that plaintiff's position was still available to him. The commission thereafter determined that plaintiff had failed without good cause to accept suitable work, and that he was thus disqualified from benefits pursuant to the act. Plaintiff appealed to a referee, who affirmed the commission's determination. Plaintiff then appealed to the Michigan Employment Security Appeal Board, which affirmed. Plaintiff appealed to Wayne Circuit Court. Charles Kaufman, J., reversed the appeal board, holding that a person who was disqualified from benefits because of voluntarily quitting his employment and who thereafter became requalified could not, as a matter of law, be disqualified from benefits by reason of the refusal to accept the former employer's offer of the same job. Defendant Morang appeals. *Held:*

1. The provision of the Michigan Employment Security Act which disqualifies one from unemployment benefits for refusal without good cause to accept an offer of suitable work applies to a claimant who has been re-offered the job from which he voluntarily quit, notwithstanding the fact that said claimant had previously been disqualified for benefits for voluntarily quitting without good cause and had become requalified for benefits by waiting the statutory period. Such construction of the act is supported by: (a) the construction given by the Michigan Employment Security Commission; (b) the absence in the face of the commission's construction, despite amendments

References for Points in Headnotes
[1, 2] 76 Am Jur 2d, Unemployment Compensation § 68.

to other portions of the act; (c) the fact that the contrary construction would result in an impermissible enlargement of the act's definition of work deemed not suitable; (d) the construction given by sister states to their statutes; and (e) the plain language of the relevant section, which refers to all persons.

2. A claimant is properly deemed to have refused suitable employment without good cause, and is thereby disqualified from unemployment benefits, where said claimant refuses to accept the re-offer of the job from which he voluntarily quit without good cause, and where it is found that the reasons causing his voluntary quit and refusal of reemployment were of a purely personal nature.

Reversed.

1. UNEMPLOYMENT COMPENSATION — SUITABLE EMPLOYMENT — RE-
   FUSAL TO ACCEPT EMPLOYMENT — DISQUALIFICATION — STAT-
   UTES.

   Disqualification from unemployment benefits for refusal without good cause to accept an offer of suitable employment, as provided by the Michigan Employment Security Act, may result from the refusal to accept a re-offer of the job from which the claimant voluntarily quit without good cause, notwithstanding the fact that the claimant had already become requalified for benefits by waiting the statutory period after the voluntary quit disqualification (MCL 421.29[1][e]; MSA 17.531[1][e]).

2. UNEMPLOYMENT COMPENSATION — SUITABLE EMPLOYMENT — GOOD
   CAUSE — STATUTES.

   A claimant is properly deemed to have refused suitable employment without good cause, and is thereby disqualified from unemployment benefits, where said claimant refuses to accept the re-offer of the job from which he voluntarily quit without good cause, and where it is found that the reasons causing his voluntary quit and refusal of reemployment were of a purely personal nature (MCL 421.29[1][e]; MSA 17.531[1][e]).

*Jeanne Mirer,* for plaintiff.

*Cooney & Cooney,* for defendant Morang.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *David A. Voges,*

Assistant Attorney General, for defendant Michigan Employment Security Commission.

Amici Curiae: *Beaumont, Smith & Harris* (by *Dwight H. Vincent* and *J. Walker Henry),* ° for Michigan Manufacturers Association and Employers Unemployment Compensation Council.

*William Mazey,* for International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

Before: Beasley, P.J., and Allen and D. C. Riley, JJ.

Allen, J. We are asked in this appeal to determine whether an employee who has voluntarily quit his employment through no fault of the employer and who has thereafter served the requisite statutory period so as to be requalified for unemployment benefits under § 29(3) of MCL 421.29; MSA 17.531 is again made ineligible for benefits if the same employer offers the same job to the employee and the employee, without good cause, refuses the job offer. Defendant Michigan Employment Security Commission answered this question in the affirmative. The trial court reversed, holding that as a matter of law the employee could not, by such offer, be made ineligible for benefits. On this question of apparent first impression, we hold the trial court erred.

Plaintiff commenced · working for defendant, Morang Drive Greenhouses, Inc. (Morang), July 1, 1974, in a salaried position as supervisor of the retail employees, ordering merchandise and routing and dispatching of deliveries. Some 10-1/2 months later, on May 16, 1975, plaintiff voluntarily quit his job. Since he voluntarily quit he was

disqualified for unemployment benefits for six weeks[1] pursuant to § 29(3) of the Michigan Employment Security Act. MCL 421.29; MSA 17.531. At the end of the six-week period, defendant Michigan Employment Security Commission (MESC) made an initial determination that plaintiff was entitled to receive benefits, and so notified Morang. Morang promptly notified MESC that "claimant's position with us is still open".

Upon instruction from MESC, plaintiff then presented Verification of Availability to Employers form (Form 1323) to his employer who completed the form, writing thereon that there was work available consisting of "the same job as he left" but the employee "refused the job due to a personality conflict with the general manager after leaving". On November 12, 1975, MESC determined that plaintiff had failed without good cause to accept suitable work when offered him. When plaintiff protested, MESC issued a redetermination stating "claimant was disqualified for refusal of work with his former employer". Plaintiff appealed to a referee who, following a full hearing, affirmed the MESC, and plaintiff appealed to the Michigan Employment Security Appeal Board. On June 9, 1977, the appeal board affirmed the decision of the referee.[2]

Appeal was then taken to the Wayne County Circuit Court, which heard the matter on briefs and oral arguments, and, on May 25, 1978, reversed the decision of MESC saying:

"I think the issue in this case is whether or not, when

---

[1] In 1975, the period of disqualification in § 29(3) was increased from 6 weeks to 13 weeks. 1975 PA 110, effective June 6, 1975.

[2] "We have reviewed the Referee's decision in the light of the evidence appearing in the record. It is our opinion that said decision is in conformity with the law and the facts."

the Legislature determined what the penalty is for a voluntary quit; that is, giving up a certain amount of weeks, getting benefits, whether or not they meant that to apply to the job that the man quit. And the question really is whether or not, if he's offered that same job back, that amounts to the suitable employment that the Legislature talks about.

"I wouldn't go so far as to say that the interpretation of the MESC would amount to a violation of the 13th Amendment to the United States Constitution, based upon involuntary servitude, but I think in one respect it comes close to it; and that is in this respect: I think they are losing sight of the fact that people aren't cattle, but they are individuals with feelings and dignity and it would appear to this Court that being offered the same employment that this fellow voluntarily quit, and that he served a penalty, that is, whatever weeks the Legislature set, he's disqualified. After serving this penalty, to be offered the same thing, I think amounts to a debasing of the individual.

\* \* \*

"There's nothing in the statute and there wouldn't necessarily have to be, which says that being offered the same employment is equivalent to suitable offer of a job. However, I think it's implicit, where the Legislature: first, didn't mention the same employment, and second, where a penalty is specifically set for voluntarily quitting that employment. I don't know whether I would use the word 'piggyback,' but I think that its almost in the nature of something—that a penalty is served, and maybe trying to give a man a double penalty, because once he quit the job and serves a penalty, to say that not going back to that exact same job, he should serve that exact same penalty *ad infinitum,* I think would be to greatly debase the individual."

Two issues, each of public importance, are raised on appeal.

### I.

*After an employee has voluntarily quit his job*

*and has served the requalification period pre-*
*scribed in § 29(3) of the statute, does an offer by*
*the same employer of the same job constitute an*
*offer of suitable work, or is it as a matter of law*
*an offer of unsuitable work?*

From 1943 to 1965, an employee who voluntarily quit his employment without good cause attributable to his employer was disqualified from unemployment benefits "for the duration of his unemployment". Since the disqualification from benefits for a voluntary quit without good cause was for the duration of the unemployment, the question of a subsequent disqualification for refusing to accept suitable work never arose. By 1965 PA 281, the Legislature removed the absolute bar from benefits for persons who had voluntarily quit without good cause by removing the language that made the disqualification "for the duration of the unemployment". At the same time, § 29(3) was added to permit requalification for benefits.[3]

The 1965 amendment gives rise to the question presented in this case, that being: Did the Legislature intend that a disqualification for refusal to accept suitable employment pursuant to § 29(1)(e) could follow a disqualification for a voluntary quit pursuant to § 29(1)(a), where there had been a requalification pursuant to § 29(3) and the job refused was the job from which the claimant had voluntarily quit? Two interpretations of the Legislature's intent, each reasonable, may be made.

---

[3] It should be noted that when originally enacted in 1936, the Michigan Employment Security Act, then known as the Michigan Unemployment Compensation Act, provided that the disqualification from benefits for voluntarily quitting one's employment without good cause was temporarily limited. See 1936 (Ex Sess) PA 1, § 29. It was only with the enactment of 1943 PA 246 that the disqualification from benefits for a voluntary quit was extended to the duration of the unemployment. While the pre-1941 language provided the opportunity for a situation not unlike that presented in this case, we have been unable to find any reported decision that would be of assistance herein.

On the one hand, it can be said to mean that once an employee who voluntarily quits serves the initial requalification period he is fully eligible for benefits—§ 29(1)(e) being only applicable to persons who leave their employer by some means other than voluntary quitting. This is the construction given the statute by plaintiff and the trial court.

On the other hand, it can be said that the legislation was a matter of compromise between those who would allow all voluntary quits and those who opposed such liberalization; that as a part of the compromise the Legislature intentionally restricted benefits for voluntary quits, the restriction being that if at the end of the disqualification period the employer again offered the same job to the quitting employee and the offer was turned down without cause, benefits would not be payable. Under this interpretation, § 29(1)(e) applies to all persons who leave employment, including persons leaving by voluntary quit. This is the interpretation adopted by MESC.

Five reasons persuade us that the latter interpretation of the statute is correct.

*First,* the agency charged with the administration of the statute has from the date of enactment of the statute construed the voluntary quit provision as being restricted by the re-offer of the same job.[4] In the absence of cogent reasons, which we do

---

[4] The changes made by the 1965 amendments were recognized in a Precedent Manual issued by the Michigan Employment Security Commission. Prior to issuance, the Manual is reviewed by the Attorney General's office and approval given. Section 76.131 of the Manual, entitled "Suitable Work", recognized that the employee may be offered the same job by the same employer and if the offer is refused without good cause may be disqualified more than once. It states:

"76.131 *Refusal Following a Prior Disqualification With Same Employer.* Situations will occur where an employer will protest a claimant's right to benefits because the claimant has failed to apply for, accept, or report to a former employer concerning, available

not find here, the construction given a statute by the agency charged with its administration is persuasive. *Magreta v Ambassador Steel Co,* 380 Mich 513, 519-520; 158 NW2d 473 (1968). An almost identical factual situation arose in *Bingham v American Screw Products,* 57 Mich App 21; 225 NW2d 199 (1974), *rev'd on other grds* 398 Mich 546; 248 NW2d 537 (1976). There, plaintiff voluntarily quit his job and, as in the instant case, was disqualified from receiving benefits for six weeks. During the waiting period he returned to his home in Kentucky. At the end of the six-week waiting period he was offered his old job back but refused on grounds the distance from Kentucky to Michigan gave good cause to refuse. MESC agreed, not because it opposed the offer of the job but because it felt plaintiff had good grounds to refuse. The circuit court reversed. This Court affirmed, saying:

"It therefore follows that the offer of the same job at the same location that claimant voluntarily left without good cause attributable to the employer or employing unit is suitable work within the meaning of § 29(6). Since plaintiff does not claim that the old job was unsuitable for any reason other than the distance from the locality in which he presently resides, the work offered was suitable work as a matter of law. *Plaintiff did not have 'good cause' to refuse to report to his former employer and thus he is disqualified* under

suitable work and where there has been a prior adjudication on a previous offer, or where there has been a prior adjudication under other disqualifying provisions of Section 29 of the Act, *such as voluntary leaving.* The Commission cannot refuse to impose a disqualification for a subsequent refusal of work merely because the claimant had already been disqualified for quitting, *or for refusing a previous offer, with the same employer.* * * * It is recognized that adjudication of distinct acts, separations or discharges *involving the same employer may result in the claimant being disqualified more than once, e.g., under the voluntary leaving* and suitable work provisions of the Act. However, if the proper application requires a disqualification based on the issue at hand, then such disqualification must be made." (Emphasis added.)

§ 29(1)(d) by reason of his failure to report to his former employer upon receiving notice of the availability of his old job." (Emphasis added.) 57 Mich App at 29.

Because both our Court and the Supreme Court presumed, without deciding, in *Bingham* that a re-offer of the former job was a permissible practice, the language quoted above is technically dicta. Nevertheless, *Bingham* is persuasive to defendants' cause because it clearly shows that both employers and the MESC interpreted the 1965 amendment as being qualified by the right of the employer to offer the same job at the end of the six-week period.

*Second,* when the Legislature amended the statute in 1975, no language was added to provide that a re-offer of the same job was not an offer of suitable employment. In 1975, House Bill 4843 was introduced proposing major increases in unemployment compensation benefits. As the bill moved through the Legislature, amendments were made so that the bill would also eliminate some of the abuses in the earlier statute. Among the abuses was the voluntary quit provision. As appears from the Third Analysis of HB 4843 prepared by the Analysis Section of the House of Representatives:

"There are many areas of potential abuse in the present act. Of particular concern to employers are the so-called 'voluntary quits', i.e. persons who leave their jobs voluntarily and yet still collect unemployment benefits. By requiring a longer requalification period for such persons, the bill would discourage an employee from quitting a job in order to draw unemployment."

No change was made in § 29(1)(e) so as to limit its application to persons leaving their employment by means other than by voluntarily quitting, nor was any language proposed to adopt a construction

different from the interpretation made by the agency from 1965 on. Obviously, the Legislature knew of the long-standing MESC construction of the statute and was aware of *Bingham.* The failure of the Legislature to make any changes other than to increase the disqualification period from 6 to 13 weeks indicates legislative acquiescence to the agency's interpretation.

*Third,* in ruling that as a matter of law an offer by the same employer of the same job cannot constitute suitable work under § 29(1)(e), the trial court impermissibly enlarged the provisions of § 29(7) of the statute. Section 29(7) lists the condition under which work is deemed unsuitable. It reads:

"Notwithstanding any other provisions of this act, work shall not be deemed suitable and benefits shall not be denied under this act to an otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; (b) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (c) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization."

Express mention in a statute implies the exclusion of other things. *Valenti Homes, Inc v Sterling Heights,* 61 Mich App 537, 540; 233 NW2d 72 (1976). The conditions listed in § 29(7) do not include the condition set forth by the trial court. If the statute is to be enlarged, it should be the Legislature which should do so rather than the Court.

*Fourth,* other jurisdictions having the occasion

to rule on this issue have held that an offer of the former job which the employee has voluntarily quit constitutes suitable work which, if refused without good cause, disqualifies the employee from benefits. *S S Kresge Co v Unemployment Compensation Comm,* 349 Mo 590; 162 SW2d 838 (1942). In *Claim of Crowe,* 280 App Div 427; 113 NYS2d 433, 435 (1952), *aff'd* 305 NY 699; 112 NE2d 780 (1953), a laundry worker voluntarily quit and, after serving her disqualification period, refused to accept a job offered by her employer. The appeal board held in favor of the employee, but the court reversed, saying:

> *"The statute however, carefully separates voluntary separation from refusal of employment.* If they are separate events, as they certainly are in the record, they may not be given unitary treatment. The Division of Placement and Unemployment Insurance itself set in motion the 'offer of employment' which was distinct in time and circumstance from the original separation.
> *"This offer of employment, even though from the former employer, fulfilled the statutory definition of an offer of employment and the effect of the separately provided penalty for 'refusal of employment' cannot be avoided by the fact that the State agency selected the same employer to make an offer or renewed instead of entirely new employment."* (Emphasis added.)

*Fifth,* our statute, like New York's, separates voluntarily leaving a job (§ 29[1][a]) from refusal to accept subsequent employment (§ 29[1][e]). In the instant case, the two events are long separated in time. The voluntary quit occurred in May, 1975, and the offer of the former job occurred five months later in October. Disparate acts are defined in disparate and separate sections of the statute. This, in itself, suggests the Legislature intended to deny benefits where the former job

was refused without cause. Under plaintiff's construction of the statute, § 29(1)(e) must be read as not applying to persons leaving their employment by voluntary quit. This is contrary to the plain language of the section which refers to all persons.[5]

## II.

*Did the MESC properly find that plaintiff failed without good cause to accept suitable employment when offered him?*

The offer of former employment does not in itself disqualify an employee from drawing benefits. The employee may still draw benefits if he has good cause to reject the proffered job. *Bingham, supra.* Plaintiff argues that he is entitled to benefits because: (a) though there was some discussion about re-employment, there was no real offer made; (b) if an offer of employment was made, the employment was not suitable, and (c) plaintiff had good cause to reject the offer because he had job offers elsewhere, defendant had failed to keep past promises, and he had a personality conflict with the general manager of the store.

The standard of review of decisions of the referee or the appeal board is set forth in § 38 of the statute, MCL 421.38; MSA 17.540. That section provides that such determinations may be reversed "only if it [the Court] finds that the order or

---

[5] The appeal in plaintiff's interpretation of the statute rests on the apparent inconsistency of allowing an employee to quit and draw benefits, but then denying benefits upon the re-offer of the same job. The flaw in the argument is that it assumes that when the Legislature granted the privilege it did so without qualification or restriction. The Legislature had reason to place some limits on the privilege. The number of voluntary quits is high. In 1977, there were 112,000 voluntary quits, even though the disqualification period had been raised to 13 weeks.

decision is contrary to law or is not supported by competent, material and substantial evidence on the whole record". The record is clear that a job offer was made to plaintiff at the end of the disqualification period. Even the trial court so found when it stated "the facts in this case are pretty clear, that the claimant was offered, at least substantially the same job at substantially the same wages that he voluntarily quit".

With respect to plaintiff's claim (b) we are governed by the definition of job suitability as defined in § 29(6) of the statute. MCL 421.29(6); MSA 17.531(6). Under the criteria set forth therein, plaintiff's former job appears suitable. Plaintiff had performed the job well for 10-1/2 months. He did not allege any risk to his health or safety and, unlike the situation in *Bingham, supra,* distance from residence to job was no problem.

Finally, we must decide whether plaintiff had good cause to reject the employment offered. In his decision of May 14, 1976, the referee found "that although claimant had good personal reasons for not wishing to return to the involved employer without an increase in pay, said reasons were not of such a nature to show good cause for refusing to accept suitable employment under § 29(1)(e), 29(6), and 29(7)(b) of the Act". The testimony in the record discloses that plaintiff felt there was no room for advancement at the greenhouse, that he had been passed over for the management of another store, that he had a personality conflict with the store manager, and that he had other job offers.

The issue raised is a question of law. Do such reasons constitute "good cause" for refusal to work as that term is used in the statute? That question is answered in *Losada v Chrysler Corp,* 24 Mich

App 656, 660; 180 NW2d 844 (1970), *lv den* 383 Mich 827 (1970), which held that personal reasons were not good cause under the statute. That decision was followed in a split decision in *Keith v Chrysler Corp,* 41 Mich App 708; 200 NW2d 764 (1972), affirmed *by an equally divided Court* 390 Mich 458; 213 NW2d 147 (1973). While the split in the Supreme Court decision casts doubt on the vitality of the *Losada* ruling, we are bound by the decision until it is changed by the higher Court. See *Lasher v Mueller Brass Co,* 62 Mich App 171; 233 NW2d 513 (1975).

Accordingly, we hold that plaintiff refused without good cause an offer of suitable work and thereby is disqualified for six weeks of unemployment benefits. Reversed. No costs, a public question being involved.